TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorney
Acting Deputy Chief, Public Corruption and Civil Rights Section
MICHAEL J. MORSE (Cal Bar No. 291763)
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorney
General Crimes Sections
    1500/1100/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-6077/7367/0304
    Facsimile:  (213) 894-0141
    E-mail:    ruth.pinkel@usdoj.gov
            michael.morse@usdoj.gov
            juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>FELIX CISNEROS, JR.,<br><br>       Defendant. | No. CR 21-51(A)-RGK<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  April 26, 2022<br>Trial Time:  9:00 a.m.<br>Location:  Courtroom 850 Roybal<br>Federal Building |

     Plaintiff United States of America, by and through its counsel

of record, the Acting United States Attorney for the Central District

of California and Assistant United States Attorneys Ruth C. Pinkel

Michael J. Morse, and Juan M. Rodriguez, hereby submits its Trial

//

//

Memorandum in the above-captioned case.

Dated: April 21, 2022             Respectfully submitted,

                                  TRACY L. WILKISON
                                  United States Attorney

                                  SCOTT M. GARRINGER
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  RUTH C. PINKEL
                                  MICHAEL J. MORSE
                                  JUAN M. RODRIGUEZ
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

# Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES.................................3

I.   STATEMENT OF THE CASE..........................................3

     A.   Summary of the Facts .....................................3

     B.   Indictment...............................................4

II.  SCHEDULING MATTERS.............................................5

     A.   The Government's Case-in-Chief...........................5

     B.   Stipulations.............................................6

     C.   Potential Defenses.......................................6

     D.   Motion in Limine and Jury Instructions...................6

III. CRIMINAL FORFEITURE............................................7

IV.  LEGAL ISSUES...................................................8

     A.   Aiding and Abetting......................................8

V.   EVIDENTIARY ISSUES.............................................9

     A.   Defendant's Statements, Adoptive Admissions, and Agent
          Admissions...............................................9

     B.   Co-Conspirator Statements................................9

     C.   Defendant's Statements Inadmissible When Proffered by
          Defendant...............................................11

     D.   Business Records........................................12

     E.   Expert Testimony........................................14

     F.   Summary Charts..........................................15

     G.   Impeachment.............................................17

     H.   Impeachment by Prior Convictions........................18

     I.   Truthfulness Provisions of a Proffer or Plea Agreement...18

     J.   Authentication and Identification.......................20

     K.   Photographs.............................................21

     L.   Duplicates..............................................21

     M.   Cross-Examination.......................................21

N.    Cross-Examination of Defendant...........................22

O.    Discretion as to Order of Proof..........................23

P.    Lack of Reciprocal Discovery.............................23

VI.   CONCLUSION...............................................23

# **TABLE OF AUTHORITIES**

CASES:                                                                    PAGE(S)

Aramula-Ruiz,
   987 F.2d 599 (9th Cir. 1993) ................................. 10

Gallego v. United States,
   276 F.2d 914 (9th Cir. 1960) ................................. 21

Kaley v. United States,
   571 U.S. 320 (2014) ......................................... 7-8

Kennedy v. Los Angeles Police Dep't,
   901 F.2d 702 (9th Cir. 1990) ................................. 12

La Porte v. United States,
   300 F.2d 878 (9th Cir. 1962) ................................. 13

Libretti v. United States,
   516 U.S. 29 (1995) ........................................... 7

Melendez-Diaz v. Massachusetts,
   557 U.S. 305, 129 S. Ct. 2527-40 (2009) ................... 13-14

Ohio v. Roberts,
   448 U.S. 56 (1980) .......................................... 13

United States v. Perry,
   857 F.2d 1346 (9th Cir. 1988) ............................... 18

Rosemond v. United States,
   134 S. Ct. 1240 (2014) .................................... 8, 9

States v. Schmit,
   881 F.2d 608 (9th Cir. 1989) ................................ 10

Territory of Guam v. Ojeda,
   758 F.2d 403 (9th Cir. 1985) ................................ 11

U-Haul Int'l, Inc. v. Lumbermans Mutual Cas. Co.,
   576 F.3d 1040 (9th Cir. 2009) ............................... 14

United States v. Avendano,
   455 F.2d 975 (9th Cir. 1972) ................................ 23

United States v. Baker,
   855 F.2d 1353 (8th Cir. 1988) ............................... 13

TABLE OF AUTHORITIES (Cont).

CASES:                                                           PAGE(S)

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985) ............................ 20, 22

United States v. Bonallo,
    858 F.2d 1427 (9th Cir. 1988) ................................ 14

United States v. Catabran,
    836 F.2d 453 (9th Cir. 1988) ................................. 14

United States v. Childs,
    5 F.3d 1328 (9th Cir. 1993) .................................. 13

United States v. Chu Kong Yin,
    935 F.2d 990 (9th Cir. 1991) ................................. 20

United States v. Cuevas,
    847 F.2d 1417 (9th Cir. 1988) ............................ 15, 16

United States v. De Peri,
    778 F.2d 963 (3d Cir. 1985) .............................. 16-17

United States v. Dorsey,
    677 F.3d 944 (9th Cir. 2012) ................................. 19

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988) ................................. 11

United States v. Garcia,
    400 F.3d 816 (9th Cir. 2005) .................................. 8

United States v. Gardner,
    611 F.2d 770 (9th Cir. 1980) ................................. 17

United States v. Gay,
    967 F.2d 322 (9th Cir. 1992) ................................. 23

United States v. Harrington,
    923 F.2d 1371 (9th Cir. 1991) ............................... 20

United States v. Hearst,
    563 F.2d 1331 (9th Cir. 1977) ............................... 22

United States v. Knigge,
    832 F.2d 1100 (9th Cir ...................................... 10

United States v. Lazarenko,
    476 F.3d 642 (9th Cir. 2007) ................................. 7

TABLE OF AUTHORITIES (Cont.)

CASES:                                                              PAGE(S)

United States v. Lo,
   839 F.3d 777 (9th Cir. 2016) ................................. 8

United States v. May,
   622 F.2d 1000 (9th Cir. 1980) .............................. 21

United States v. Messino,
   382 F.3d 704 (7th Cir. 2004) ................................ 7

United States v. Miranda-Uriarte,
   649 F.2d 1345 (9th Cir. 1981) .............................. 22

United States v. Naranjo,
   634 F.3d 1198 (11th Cir. 2011) ............................. 14

United States v. Norton,
   867 F.2d 1354 (11th Cir. 1989) ............................. 13

United States v. Oaxaca,
   569 F.2d 518 (9th Cir. 1978) ............................... 21

United States v. Osazuwa,
   564 F.3d 1169 (9th Cir. 2009) .............................. 18

United States v. Perez,
   658 F.2d 654 ............................................... 23

United States v. Ray,
   930 F.2d 1368 (9th Cir. 1990) .......................... 12, 13

United States v. Rubino,
   431 F.2d 284 (6th Cir. 1970) ............................... 17

United States v. Scales,
   594 F.2d 558 (6th Cir. 1979) ............................... 16

United States v. Schoneberg,
   396 F.3d 1036 ............................................. 19

United States v. Shaw,
   829 F.2d 714 (9th Cir ..................................... 19

United States v. Smith,
   893 F.2d 1573 (9th Cir ................................. 10, 21

TABLE OF AUTHORITIES (Cont.)

CASES:                                                      PAGE(S)

United States v. Stearns,
   550 F.2d 1167 (9th Cir. 1977) ................................. 21

United States v. Turner,
   528 F.2d 143 (9th Cir. 1975) .................................. 23

United States v. Weiner,
   578 F.2d 757 (9th Cir. 1978) .................................. 21

United States v. Zemek,
   634 F.2d 1159 (9th Cir. 1980) ................................. 23

Williamson v. United States,
   512 U.S. 594 (1994) .......................................... 11

Yarborough,
   852 F.2d 1522 (9th Cir. 1988) ................................ 10

**Rules:**

Fed. R. Evid. 104 ............................................... 12

Fed. R. Evid. 611 ........................................... 17, 21

Fed. R. Evid. 702 ............................................... 15

Fed. R. Evid. 703 ............................................... 15

Fed. R. Evid. 704 ............................................... 15

Fed. R. Evid. 801 ............................................ 9, 10

Fed. R. Evid. 901 ............................................... 20

Fed. R. Evid. 902 ............................................... 13

Fed. R. Evid. 1003 .............................................. 21

Federal Rule of Criminal Procedure 16 ........................... 5

Federal Rule of Evidence 608 ................................ 17, 22

Federal Rule of Evidence 609 ................................. 6, 18

Federal Rule of Evidence 803 ................................ 12, 13

Federal Rule of Evidence 1006 ............................... 15, 16

Rule 32.2 ....................................................... 8

TABLE OF AUTHORITIES (Cont.)

RULES:                                                          PAGE(S)

Rule 611 ...................................................  17

Rule 801 ...............................................  10, 11

Rule 803 ...........................................  12, 13, 14

Rule 806 ...................................................  13

Rule 1006 ..................................................  17

Rules 16 ...................................................  23

**Federal Statutes:**

18 U.S.C. §§ 371 ...........................................   4

26 U.S.C. § 7206 ...........................................   5

**State Statutes:**

§ 609.20[2] ................................................  18

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   STATEMENT OF THE CASE**

**A.   Summary of the Facts**

Defendant FELIX CISNEROS, JR. ("defendant") is a former Special Agent of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement-Homeland Security Investigations ("HSI").  As a special agent, defendant had access to, among other things, restricted law enforcement databases.  Beginning in September 2015 and continuing through at least March 2017, defendant abused his federal employment for his own personal profit.  More specifically, defendant conspired with E.S., an attorney engaged in criminal conduct and associated with a criminal organization, and J.B., to commit bribery of a public official.  In exchange for cash, checks, private jet flights, hotel stays, meals, and other items of value, defendant provided various services and official acts for E.S.  For example, defendant regularly looked up information in confidential law enforcement databases for E.S.  That information ranged from determining whether individuals were under investigation to altering law enforcement records.  In another instance, defendant tried to assist a foreign National, and client of E.S., with gaining entry into the United States.  In yet another instance, defendant obtained a parole letter, which is used by law enforcement to admit an otherwise inadmissible alien for a law enforcement need, under false pretenses.  Defendant represented to multiple law enforcement personnel, including the then Acting Special Agent in Charge, that defendant was seeking to admit the foreign National because the foreign National was going to assist DHS; defendant listed himself as

the agent responsible for the submission.  In addition to the foregoing, in violation of his official duties and at the behest of E.S. and J.B., defendant queried individuals and addresses to determine whether law enforcement had any open investigations or interest in them.

In sum, in exchange for things of value, defendant: (1) attempted to obtain or influence the entry into the United States of foreign nationals; (2) omitted enforcing immigration laws consistent with his duties as an HSI and CBP agent; (3) conducted law enforcement database inquiries to provide information to E.S. and his associates to help them avoid law enforcement detection and monitoring; and (4) created alerts in law enforcement databases that would allow defendant to learn information so he could help E.S and E.S.'s associates avoid law enforcement detection and monitoring. Further, for calendar years 2015 and 2016, defendant failed to report the income he received as bribe payments; defendant's under-reporting of income resulted in lowering the taxes reported as due and owing on his Form 1040 individual tax returns.

**B.  Indictment**

For his conduct, on February 16, 2021, a grand jury charged defendant in a twenty-six count Indictment with violations of 18 U.S.C. §§ 371 (conspiracy to commit bribery of a public official), 201 (bribery of a public official) and 1956 (money laundering). (Dkt. 1.)

On August 25, 2021, a grand jury returned a thirty count First Superseding Indictment with violations of 18 U.S.C. §§ 371 (conspiracy to commit bribery of a public official), 201 (bribery of

4

a public official), 1956 (money laundering), and 26 U.S.C. § 7206(1) subscribing to a false tax return and two forfeiture allegations. (Dkt. 34.)

## II.   SCHEDULING MATTERS

### A.   The Government's Case-in-Chief

Jury trial is set for April 26, 2022, at 9:00 a.m.  Absent stipulations, the government expects its case-in-chief to last four to six days.  Not including document custodians, the government plans to call approximately 15 witnesses, including summary witnesses for digital evidence, calculation of unreported income, summary/expert testimony for defendant's TECS database searches, and expert testimony regarding the extraction of digital devices.  Absent stipulations, which defendant has declined, the government plans to call approximately 11 document custodians from financial institutions, casinos and the Thrift Savings Plan and approximately 5 document custodians from government agencies.

The government will also call DHS OIG SA Carlos Feliciano to testify both as a lay and an expert witness.  Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the government provided notice to defendant's counsel that SA Feliciano will testify as an expert regarding federal law enforcement's use of TECS, the proprietary computerized system that is designed to manage the flow of individuals through border ports of entry and for immigration enforcement case management.  Among other things, SA Feliciano will discuss the training received by federal law enforcement agents in order for them to be able to utilize TECS, including the fact that

agents are explicitly warned that the system is to be used only for law enforcement purposes.

Additionally, the government will call Internal Revenue Service ("IRS") Supervisory Revenue Agent Penny Yung.  Supervisory Revenue Agent Yung will testify regarding defendant's unreported income that underlies the tax related counts of the indictment.

The government will also call Special Agent Michael Torbic who will present timeline summary charts related to the financial, digital, and law enforcement database evidence presented during trial to aid in the jury's understanding of the evidence.

The government will also call a representative from the United States Department of State to lay foundation and further certify certain State Department records the government will present related to the Foreign Nationals in this case.

**B.   Stipulations**

The parties have conferred and the defense has indicated it will not enter into any stipulations.  Consequently, the government is calling a large number of document custodians.

**C.   Potential Defenses**

On April 20, 2022, the defense filed a notice stating it would rely upon a Public Authority Defense. (Dkt. 71)

**D.   Motion in Limine and Jury Instructions**

The government has filed one pretrial motion:  a motion in limine to admit evidence of defendant's prior convictions under Federal Rule of Evidence 609 (Dkt. 49.)  Defendant filed an opposition (dkt. 55), and the Court has not yet issued an order on the motion.

1    The parties filed joint jury instructions. (Dkt. 66).  The

2    government filed four proposed, disputed jury instructions. (Dkt.

3    67).  Defendant filed two proposed jury instructions.  (Dkt. 72.) The

4    government will submit an exhibit list on the first day of trial.

5    **III.  CRIMINAL FORFEITURE**

6    In addition to setting forth criminal charges, the First

7    Superseding Indictment in this action contains criminal forfeiture

8    allegations.  In the event that defendant is found guilty of one or

9    more charges associated with a forfeiture allegation, the Court must

10   determine whether defendant's interest in the associated property

11   should be forfeited.

12   Criminal forfeiture is in personam, in that it may be imposed

13   only after a criminal conviction, and applies only to the property of

14   the convicted defendant.  See United States v. Lazarenko, 476 F.3d

15   642, 647 (9th Cir. 2007). The extent of criminal forfeiture is

16   determined by the conviction, and forfeiture must correspond in

17   nature and scope to the underlying criminal conduct for which the

18   defendant was convicted.  See United States v. Messino, 382 F.3d 704,

19   714 (7th Cir. 2004).  Criminal forfeiture is imposed on a convicted

20   defendant as part of sentencing, and is not an element of the

21   underlying substantive offense.  See Libretti v. United States, 516

22   U.S. 29, 39 (1995) ("Our precedents have likewise characterized

23   criminal forfeiture as an aspect of punishment imposed following

24   conviction of a substantive criminal offense."); see also Kaley v.

25   United States, 571 U.S. 320, 323 (2014) (forfeiture serves to punish

26   the wrong-doer, deter future illegality, lessen the economic power of

27   criminal enterprises, compensate victims, improve conditions in

28

crime-damaged communities, and support law enforcement activities such as police training).

Here, the government intends to seek a money judgment of forfeiture following any conviction, in an amount to be determined following trial.  Pursuant to Rule 32.2(b)(1)(A), "[i]f the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Accordingly, the amount of any money judgment is a post-trial question solely for the Court, not the jury, and which the Court may address at or prior to sentencing. See United States v. Lo, 839 F.3d 777, 795 (9th Cir. 2016) ("Federal Rule of Criminal Procedure 32.2 does not require a jury determination for forfeiture in the form of a personal money judgment.").

## IV.  LEGAL ISSUES

The elements of all charged offenses are included in the jointly agreed upon jury instructions.  The following legal issues may also arise.

### A.  Aiding and Abetting

Aiding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense.  United States v. Garcia, 400 F.3d 816, 820 (9th Cir. 2005).  The defendant's conduct need not facilitate each and every element of the crime; a defendant can be convicted as an aider and abettor even if the defendant's conduct "relates to only one (or some) of a crime's phases or elements." Rosemond v. United States, 134 S. Ct. 1240, 1246-47 (2014).  The intent requirement is satisfied when a person actively participates

in a criminal venture with advance knowledge of the circumstances constituting the elements of the charged offense. Id. at 1248-49. The government is not required to prove precisely which person actually committed the crime and which person aided and abetted.  Ninth Circuit Model Criminal Jury Instructions, No. 4.1 (2022 ed.).

Here, defendant has disputed the government's aiding and abetting jury instruction, which the government proposes because the money laundering counts, Counts Three to Twenty-Eight, specifically include an aiding and abetting theory.

## V.    EVIDENTIARY ISSUES

### A.    Defendant's Statements, Adoptive Admissions, and Agent Admissions

The government intends to admit statements made by defendant. Statements by a party opponent when offered against that party are excluded from the hearsay definition. Fed. R. Evid. 801(d)(2)(A). Thus, defendant's statements may be admitted against the defendant.

In addition, statements that defendant adopted or that were made by an agent of defendant on a matter within the scope of that agency relationship are similarly admissible. Fed. R. Evid. 801(d)(2)(C), (D).  Under this theory, statements made by defendant's co-workers in response to requests for information or assistance from defendant were adopted by defendant.

Moreover, as set out below, statements by a co-conspirator during and in furtherance of the conspiracy are admissible. Fed. R. Evid. 801(d)(2)(E).

### B.    Co-Conspirator Statements

The government will seek to introduce email and text message correspondence between defendant, E.S. and J.B., in 2015 to 2017,

during and in furtherance of their bribery conspiracy.  These statements will pertain to and help explain how the conspiracy operated.

A statement made by one co-conspirator or co-schemer during the course and in furtherance of the conspiracy or scheme may be used against another conspirator or co-schemer because such statements are not hearsay. Fed. R. Evid. 801(d)(2)(E); Bourjaily v. United States, 483 U.S. 171, 183 (1987).  A statement admitted under Rule 801(d)(2)(E) does not violate the Confrontation Clause, and no independent inquiry into reliability is needed. Bourjaily, 483 U.S. at 183-84; United States v. Knigge, 832 F.2d 1100, 1107 (9th Cir. 1987), amended, 846 F.2d 591 (9th Cir. 1988).  Rule 801(d)(2)(E) requires a foundation that: (1) the declaration was made during the life of the conspiracy; (2) the declaration was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and defendant's connection to it.  Bourjaily, 483 U.S. at 173, 181; United States v. Smith, 893 F.2d 1573, 1578 (9th Cir. 1990). These foundational requirements must be established by a preponderance of the evidence.  Bourjaily, 483 U.S. at 175; United States v. Schmit, 881 F.2d 608, 610 (9th Cir. 1989).  To be admissible under Rule 801(d)(2)(E), the statement must "further the common objectives of the conspiracy," or "set in motion transactions that [are] an integral part of the [conspiracy]."  United States v. Aramula-Ruiz, 987 F.2d 599, 607-08 (9th Cir. 1993); United States v. Yarborough, 852 F.2d 1522, 1535 (9th Cir. 1988).

### C.  Defendant's Statements Inadmissible When Proffered by Defendant

The government intends to introduce certain statements made by the defendant.  Under Rule 801(d)(2), a defendant's prior statement is admissible if offered against him (or his co-conspirators, under Rule 801(d)(2)(E), as addressed above).  See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (stating that "self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay," but that "non-self inculpatory statements are inadmissible hearsay").  A statement of a party opponent is not hearsay if the statement is offered against a party and is his own statement in either his individual or representative capacity, and it relates to the offense in question.  Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985).  Moreover, a statement need not be incriminating to be an admission.  Id. at 408.

However, defendant may not offer their own statements, or the statements of their co-conspirators.  Ortega, 203 F.3d at 682 (citing Williamson v. United States, 512 U.S. 594, 599 (1994)); see also United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988) (district court properly sustained government's hearsay objection to defendant's attempt to solicit defendant's post-arrest statements during cross-examination of FBI agent).

The Ninth Circuit held in Ortega that the defendant's non-self inculpatory statements were inadmissible "even if they were made contemporaneously with other self-inculpatory statements."  Ortega, 203 F.3d at 682 (citing Williamson, 512 U.S. at 599).  The Ninth Circuit held that "[i]f the district court [had] ruled in his favor,

11

1   [the defendant] would have been able to place his exculpatory

2   statements before the jury without subjecting [himself] to cross

3   examination, precisely what the hearsay rule forbids. Thus the

4   district court did not abuse its discretion when it limited [the

5   defendant's] ability to elicit his exculpatory hearsay statements on

6   cross-examination." Id. at 682 (internal punctuation and citation

7   omitted).

8         D.   **Business Records**

9      The government will offer bank and casino records pursuant to

10   Federal Rule of Evidence 803(6), which carves out an exception to the

11   hearsay rule for business records.

12      Moreover, even if there were some dispute, the bank records are

13   plainly admissible even without a stipulation.  A document is

14   admissible under Rule 803(6) where the following foundation is laid:

15   (1) the document was made or transmitted by a person with knowledge

16   at or near the time of the incident recorded, (2) the document was

17   kept in the course of a regularly conducted business activity, and

18   (3) making that record was a regular practice of that activity.

19   United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990); Kennedy v.

20   Los Angeles Police Dep't, 901 F.2d 702, 717 (9th Cir. 1990),

21   overruled on other grounds by Hunter v. Bryant, 502 U.S. 224 (1991).

22   In determining if these foundational facts have been established, the

23   court may consider hearsay and other evidence not admissible at

24   trial. See Fed. R. Evid. 104(a), 1101(d)(1); Bourjaily v. United

25   States, 483 U.S. 171, 178-79 (1987).

26

27

28                                  12

Business records are self-authenticating when accompanied by a written declaration of a "custodian or another qualified person" establishing the same requirements as Rule 806(6) as described in the paragraph above. Fed. R. Evid. 902(11) (citing Fed. R. Evid. 806(6)(A)-(C)).

In the absence of a 902(11) certificate, the foundation may also be established either through a custodian of records or "another qualified witness." Fed. R. Evid. 803(6)(D). "The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993) (quoting Ray, 930 F.2d at 1370) (internal quotation marks omitted). The government does not need to establish when and by whom the document was prepared. Ray, 930 F.2d at 1370.

Challenges to the accuracy or completeness of the business records ordinarily goes to the weight of the evidence and not its admissibility. See, e.g., La Porte v. United States, 300 F.2d 878, 880 (9th Cir. 1962). Because Rule 803(6) represents a firmly rooted hearsay exception, if non-testimonial evidence meets the requirements for admission under the rule, no further showing of reliability is necessary for admission under the Confrontation Clause. See Ohio v. Roberts, 448 U.S. 56, 66 n.8 (1980), overruled on other grounds by Crawford v. Washington, 541 U.S. 36 (2004); Ray, 930 F.2d at 1371; United States v. Norton, 867 F.2d 1354, 1363 (11th Cir. 1989); United States v. Baker, 855 F.2d 1353, 1360 (8th Cir. 1988); see also Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324, 129 S. Ct. 2527, 2539-40 (2009) ("[b]usiness and public records are generally

13

admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial"); United States v. Naranjo, 634 F.3d 1198, 1213-14 (11th Cir. 2011) (holding business records are "not testimonial").

Moreover, computer printouts that are compilations of data regularly maintained by a business are admissible as records of regularly conducted activity pursuant to Rule 803(6). See United States v. Catabran, 836 F.2d 453, 458 (9th Cir. 1988) ("Any question as to the accuracy of the printouts, whether resulting from incorrect data entry or the operation of the computer program, as with inaccuracies in any other type of business records, would have affected only the weight of the printouts, not their admissibility."); United States v. Bonallo, 858 F.2d 1427, 1436 (9th Cir. 1988) ("The fact that it is possible to alter data contained in a computer is plainly insufficient to establish untrustworthiness. The mere possibility that the logs may have been altered goes only to the weight of the evidence not its admissibility."); U-Haul Int'l, Inc. v. Lumbermans Mutual Cas. Co., 576 F.3d 1040, 1043-44 (9th Cir. 2009) (computer records kept in the regular course of business activity properly admitted under Rule 803(6)).

**E. Expert Testimony**

As stated above, the government has given notice of intent to elicit expert testimony regarding TECS from SA Feliciano.  If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, an expert qualified by

14

1   "knowledge, skill, experience, training or education" may provide

2   opinion testimony on the issue in question, "if (1) the testimony is

3   based upon sufficient facts or data, (2) the testimony is the product

4   of reliable principle and methods, and (3) the witness has applied

5   the principles and methods reliable to the facts of the case."  Fed.

6   R. Evid. 702.

7        An expert's opinion may be based on hearsay or facts not in

8   evidence, where the facts or data relied upon are of the type

9   reasonably relied upon by experts in the field.  Fed. R. Evid. 703.

10  An expert may provide opinion testimony even if it embraces an

11  ultimate issue to be decided by the trier of fact however, no expert

12  witness testifying with respect to the mental state or condition of a

13  defendant may state an opinion or inference as to whether the

14  defendant did or did not have the mental state or condition

15  constituting an element of the crime charged or of a defense thereto.

16  Such ultimate issues are matters for the trier of fact alone.  Fed.

17  R. Evid. 704.  The court has broad discretion to determine whether to

18  admit expert testimony.  See, e.g., United States v. Cuevas, 847 F.2d

19  1417, 1428 (9th Cir. 1988).

20       **F.   Summary Charts**

21       To streamline the presentation of evidence for the jury, the

22  government intends to use charts to summarize defendant's: (1)

23  relevant queries of the TECS database; (2) interactions and

24  communications with co-conspirators and co-workers, including text

25  messages, emails, and phone calls; and (3) bribe check payments and

26  calculation of unreported income.  Charts and summaries of evidence

27  are governed by Federal Rule of Evidence 1006, which permits the

28

15

introduction of charts, summaries, or calculations of voluminous writings, recordings, or photographs which cannot conveniently be examined in court.  See Fed. R. Evid. 1006.  Accordingly, a summary chart may be admitted as substantive evidence when the proponent establishes that the underlying documents upon which the summary is based are voluminous, admissible, and available for inspection.  Id.; see also United States v. Meyers, 847 F.2d 1408, 1412 (9th Cir. 1988).  All that is required for the rule to apply is that the underlying writings be voluminous and that in-court examination not be convenient.  United States v. Scales, 594 F.2d 558, 562 (6th Cir. 1979).  Although the materials underlying the summary must be "admissible," they need not themselves be "admitted" into evidence. Meyers, 847 F.2d at 1412.

In addition, the summary chart must be accurate, authentic, and properly introduced.  Scales, 594 F.2d at 563.  Where a chart does not contain complicated calculations that would require an expert for accuracy, authentication of the chart requires only that the witness (1) have properly catalogued the exhibits and records upon which the chart is based and (2) have knowledge of the analysis of the records referred to in the chart.  Id.  Neither of these requirements necessitates any special expertise.  Id.  The person who supervises the compilation of the summary chart is the proper person to attest to its authenticity and accuracy.  Id. In addition, summary charts may be used by the government in its opening statement.  Indeed, "such charts are often employed in complex conspiracy cases to provide the jury with an outline of what the government will attempt to prove."  United States v. De Peri, 778 F.2d 963, 979 (3d Cir.

16

1   1985) (approving government's use of chart); <u>United States v. Rubino</u>,

2   431 F.2d 284, 289-90 (6th Cir. 1970) (same).

3        Also, apart from Rule 1006, a summary of evidence may be

4   presented to the jury with proper limiting instructions.  Rule 611(a)

5   recognizes that the trial court must "exercise reasonable control

6   over the mode and order of examining witnesses and presenting

7   evidence so as to: (1) make those procedures effective for

8   determining the truth; [and] (2) avoid wasting time . . . ."  Fed. R.

9   Evid. 611(a); <u>see also</u> <u>United States v. Gardner</u>, 611 F.2d 770, 776

10  (9th Cir. 1980) (in tax case, use of chart summarizing defendant's

11  assets, liabilities, and expenditures "contributed to the clarity of

12  the presentation to the jury, avoided needless consumption of time

13  and was a reasonable method of presenting the evidence").

14       **G.   Impeachment**

15       Federal Rule of Evidence 608(a) permits attacks on a witness's

16  credibility through testimony about the witness's general character

17  or reputation for truthfulness or untruthfulness. Fed. R. Evid.

18  608(a).  However, extrinsic evidence (including testimony from third

19  party witnesses) about the witness's specific instances of conduct

20  for the purpose of attacking the witness's character for truthfulness

21  or untruthfulness is prohibited, except in the case of prior

22  convictions.  Fed. R. Evid. 608(b).  Counsel may only probe specific

23  instances of conduct probative of a witness's character for

24  truthfulness or untruthfulness during cross-examination (without

25  proffering extrinsic evidence) with respect to (1) the testifying

26  witness or (2) other witnesses about whose character the witness has

27  testified about.  <u>Id.</u>  Thus, counsel may not offer testimony or any

28

                                   17

other extrinsic evidence about specific instances of conduct for the purpose of attacking a testifying witness's credibility.

### H.   Impeachment by Prior Convictions

Certain witnesses' character for truthfulness may be attacked by way of prior convictions, pursuant to Federal Rule of Evidence 609. The scope of inquiry permitted when lodging such attacks are limited. "Absent exceptional circumstances, evidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction. Generally, only the prior conviction, its general nature, and punishment of felony range are fair game . . . ." United States v. Osazuwa, 564 F.3d 1169, 1175 (9th Cir. 2009) (alterations adopted) (citations omitted) (internal quotation marks omitted).  Exceptional circumstances may include, for example, when a witness attempts to "explain away" prior convictions by offering their "own version of the underlying facts" that tend to create a false impression about the conviction.  See United States v. Perry, 857 F.2d 1346, 1352 (9th Cir. 1988).  Otherwise, the scope of examination regarding prior convictions should be limited to the "to establishing the bare facts of the conviction: usually the name of the offense, the date of the conviction, and the sentence." Weinstein's Federal Evidence § 609.20[2] at 609-57-60.

### I.   Truthfulness Provisions of a Proffer or Plea Agreement

The government will call a cooperating witness, who was themselves charged in connection with their involvement in the bribery conspiracy but have pleaded guilty pursuant to a cooperation plea agreement.  The plea agreement includes a provision that requires the defendant to fully cooperate with the government,

18

including by testifying as a witness if called upon to do so.  The plea agreement also includes a provision specifically requiring the cooperating witnesses to be honest and forthcoming, and to render truthful testimony.

"Eliciting testimony on direct examination that a witness entered into a plea agreement that requires truthful testimony may constitute vouching."[1]  United States v. Dorsey, 677 F.3d 944, 953 (9th Cir. 2012).  However, "referring to a plea agreement's mandate to be truthful does not constitute vouching for a witness if such references are 'made in response to an attack on the witness's credibility because of his plea bargain,' including an attack in defense counsel's opening statement." Id. (quoting United States v. Monroe, 943 F.2d 1007, 1013–14 (9th Cir. 1991)); see also id. at 954 ("Defense counsel implied in his opening statement that Fomby was a liar and that he was biased because he got 'a deal from the government.' The prosecutor permissibly responded to this attack by eliciting testimony that Fomby's plea agreement required him to tell the truth. When the defense opens a door, it should not be surprised to see the prosecutor enter.").

Here, the government anticipates that the cooperating witnesses'

---

[1] If such testimony is inadvertently elicited on direct examination before any attack on the cooperating witnesses' credibility in opening or otherwise, a curative instruction would be in order, see United States v. Shaw, 829 F.2d 714, 717–18 (9th Cir. 1987), and of course defense counsel must be permitted fulsome cross examination, see United States v. Schoneberg 396 F.3d 1036, 1043 (9th Cir. 2005) (finding error where truthfulness provision was elicited on direct examination, and defense counsel's cross examination "was cut off" in a manner that – when viewed alongside the language of the curative instructions – "vitiated" defense counsel's point).

1   credibility will be attacked in opening statement by defense counsel.

2   If so, the government should be permitted to elicit testimony

3   regarding the truthful testimony provision during direct

4   examination.

5       **J.   Authentication and Identification**

6       The requirement of authentication or identification as a

7   condition precedent to admissibility is satisfied by "evidence

8   sufficient to support a finding that the item is what the proponent

9   claims it is." Fed. R. Evid. 901(a).  Federal Rule of Evidence

10  901(a) requires that the government "make only a prima facie showing

11  of authenticity 'so that a reasonable juror could find in favor of

12  authenticity or identification.'" United States v. Chu Kong Yin, 935

13  F.2d 990, 996 (9th Cir. 1991) (quoting United States v. Blackwood,

14  878 F.2d 1200, 1202 (9th Cir. 1989)); see also United States v.

15  Black, 767 F.2d 1334, 1342 (9th Cir. 1985).  Once the government

16  meets this burden, "[t]he credibility or probative force of the

17  evidence offered is, ultimately, an issue for the jury." Black, 767

18  F.2d at 1342.

19      To be admitted into evidence, a physical exhibit must be in

20  substantially the same condition as when the crime was committed.

21  The court may admit the evidence if there is a "reasonable

22  probability the article has not been changed in important respects."

23  United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).

24  This determination is to be made by the trial judge and will not be

25  overturned except for clear abuse of discretion.  Id.  Factors the

26  court may consider in making this determination include the nature of

27  the item, the circumstances surrounding its preservation, and the

28

1   likelihood of intermeddlers having tampered with it.  Gallego v.

2   United States, 276 F.2d 914, 917 (9th Cir. 1960).

3   **K.   Photographs**

4       Photographs are generally admissible as evidence.  See United

5   States v. Stearns, 550 F.2d 1167, 1170-71 (9th Cir. 1977)

6   (photographs of crime scene admissible).  Photographs should be

7   admitted so long as they fairly and accurately represent the event or

8   object in question. See United States v. Oaxaca, 569 F.2d 518, 525

9   (9th Cir. 1978).  The Ninth Circuit has held that "[p]hotographs are

10  admissible as substantive as well as illustrative evidence." United

11  States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

12  **L.   Duplicates**

13      "A duplicate is admissible to the same extent as the original

14  unless a genuine question is raised about the original's authenticity

15  or the circumstances make it unfair to admit the duplicate." Fed. R.

16  Evid. 1003; see also United States v. Smith, 893 F.2d 1573, 1579 (9th

17  Cir. 1990).

18  **M.   Cross-Examination**

19      The scope of a cross-examination is within the discretion of the

20  trial court. Fed. R. Evid. 611(b).  The district court has broad

21  authority to control the extent of cross-examination, and "in its

22  discretion may limit cross-examination in order to preclude

23  repetitive questioning, upon determining that a particular subject

24  has been exhausted, or to avoid extensive and time-wasting

25  exploration of collateral matters." United States v. Weiner, 578 F.2d

26  757, 766 (9th Cir. 1978).

27

28
                                  21

1          **N.    Cross-Examination of Defendant**

2          A defendant who testifies at trial may be cross-examined as to

3   all matters reasonably related to the issues the defendant puts in

4   dispute. United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54

5   (9th Cir. 1981). "A defendant has no right to avoid cross-examination

6   on matters which call into question his claim of innocence." Id. at

7   1354.  Moreover, a defendant who testifies at trial waives his Fifth

8   Amendment privilege and may be cross-examined on matters made

9   relevant by his direct testimony.  United States v. Black, 767 F.2d

10  1334, 1341 (9th Cir. 1985).

11         The scope of a defendant's waiver is coextensive with the scope

12  of relevant cross-examination.  United States v. Cuozzo, 962 F.2d

13  945, 948 (9th Cir. 1992); Black, 767 F.2d at 1341.  The extent of the

14  waiver is determined by whether the question reasonably relates to

15  subjects covered by defendant's direct testimony. United States v.

16  Hearst, 563 F.2d 1331, 1340 (9th Cir. 1977).  Federal Rule of

17  Evidence 608(b) provides that:

            [E]xtrinsic evidence is not admissible to prove specific
18          instances of a witness's conduct in order to attack or support
            the witness's character for truthfulness. But the court may,
19          on cross-examination, allow them to be inquired into if they
            are probative of the character for truthfulness or
20          untruthfulness of (1) the witness; or (2) another witness
            whose character the witness being cross- examined has
21          testified about.

22  If he chooses to testify, defendant's credibility and state of mind will

23  be central.  As the Ninth Circuit has held, Federal Rule of Evidence

24  608(b) "specifically contemplates inquiries into prior behavior in order

25  to challenge a witness's credibility[,]" which is why "[e]vidence of

26  prior frauds is considered probative of the witness's character for

27

28                                   22

truthfulness or untruthfulness." <u>United States v. Gay</u>, 967 F.2d 322, 328 (9th Cir. 1992).

### O.    Discretion as to Order of Proof

The order of proof is a matter committed to the discretion of the district court, which may conditionally introduce evidence or otherwise permit deviations from the natural order of a case.  <u>E.g.</u> <u>United States v. Zemek</u>, 634 F.2d 1159, 1169 (9th Cir. 1980); <u>see also</u> <u>United States v. Perez</u>, 658 F.2d 654, 658-59 (court may admit co-conspirator statement subject to motion to strike if foundation for admissibility not laid, so long as the motion to strike would cure any defect); <u>United States v. Turner</u>, 528 F.2d 143, 162 (9th Cir. 1975) ("The trial judge has wide discretion in supervising the order of proof in a conspiracy case."); <u>United States v. Avendano</u>, 455 F.2d 975, 975 (9th Cir. 1972) (calling witnesses out-of-order).

### P.    Lack of Reciprocal Discovery

The government has made requests for any reciprocal discovery to which the government was entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.  To date, defendant has not produced any reciprocal discovery to the government.

## VI.  CONCLUSION

The government hereby respectfully requests leave to file supplemental trial memorandum before or during trial, as it may become appropriate.