STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorney
Public Corruption and Civil Rights Section
MICHAEL J. MORSE (Cal. Bar No. 291763)
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorneys
General Crimes Section
     1500/1100/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6077/7367/0304
     Facsimile: (213) 894-7631
     E-mail:    ruth.pinkel@usdoj.gov
                michael.morse@usdoj.gov
                juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-51(A)-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; EXHIBITS |
| v. | Sentencing Date: September 19, 2022 |
| FELIX CISNEROS, JR., | Time: 10:00 a.m. |
| Defendant. | Location: Courtroom of the Honorable R. Gary Klausner |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Ruth C. Pinkel, Michael J. Morse, and Juan M. Rodriguez, hereby files its sentencing position for defendant Felix Cisneros, Jr.

This Sentencing Position is based upon the attached memorandum of points and authorities, the exhibits attached hereto, the files

and records in this case, the Presentence Investigation Report ("PSR") (Dkt. 115), and such further evidence and argument as the Court may permit.

Dated: September 6, 2022

Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

         /s/
RUTH C. PINKEL
MICHAEL J. MORSE
JUAN M. RODRIGUEZ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

After a five-day trial, a federal jury found Defendant FELIX CISNEROS, JR. ("defendant") guilty of Conspiracy to Commit Bribery of a Public Official, in violation of 18 U.S.C. § 371; Bribery of a Public Official, in violation of 18 U.S.C. § 201(b)(2)(A) and (C); twenty-six counts of Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and two counts of Subscribing to a False Tax Return, in violation of in violation of 26 U.S.C. § 7206(1).  As proven at trial, defendant conspired with others to bribe a public official, himself, and instructed a coconspirator, E.S., to funnel bribe checks payable directly to the third-party financial institutions holding defendant's credit card and loan debts, and to defendant's wife, in order to conceal the check bribe proceeds.  He then intentionally omitted income from the bribe proceeds from his 2015 and 2016 tax returns.  (The unreported income figure does not include cash bribe payments of at least $40,000.)

The United States Probation and Pretrial Services Office ("USPPSO") calculated a total offense level of 32 and a criminal history category of I, resulting in a Sentencing Guidelines range of 121-151 months' imprisonment and one to three years' supervised release.  (Dkt. 115, Pretrial Sentence Report ("PSR") ¶¶ 43-81, 87.) The government agrees with the USPPSO's calculations.  Although defendant's conduct was egregious, and his history of corrupt acts was long, the government believes that the Guidelines appropriately account for defendant's conduct.  Accordingly, the government respectfully requests that the Court sentence defendant to a within

Guidelines sentence of 145 months' imprisonment, three years' supervised release, a $3,000 special assessment, and a $35,000 fine.

The Court has already entered a Money Judgment of Forfeiture in the amount of $133,000, which becomes final as to defendant at the time of sentencing and is part of the sentence. (Dkt. 118.)

## II. FACTUAL BACKGROUND

Defendant is a former Special Agent of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement-Homeland Security Investigations ("HSI"). (PSR ¶ 11.) As a special agent, defendant had access to, among other things, restricted law enforcement databases and information. (Id. ¶ 15.) Beginning in September 2015 and continuing through at least March 2017, defendant abused his federal employment for his own personal profit. More specifically, defendant conspired with E.S., an attorney engaged in criminal conduct and associated with a criminal organization, and J.B., to commit bribery of a public official. In exchange for cash, checks, private jet flights, hotel stays, meals, and other items of value, defendant provided various services and official acts for E.S. (Id. ¶¶ 19-22.) For example, defendant regularly looked up information in confidential law enforcement databases for E.S. That information ranged from determining whether individuals were under investigation to altering law enforcement records. (Id. ¶ 22.) In another instance, defendant tried to assist a foreign National, and client of E.S., with gaining entry into the United States. (Id. ¶¶ 22-23.)

During the most egregious conduct, defendant obtained a parole letter, which is used by law enforcement to admit an otherwise inadmissible alien for a law enforcement need, under false pretenses.

Defendant represented to multiple law enforcement personnel, including the then Acting Special Agent in Charge, that defendant was seeking to admit the foreign National because the foreign National was going to assist DHS; defendant listed himself as the agent responsible for the submission. (Id. ¶¶ 25-26, 56.) In addition to the foregoing, in violation of his official duties and at the behest of E.S. and J.B., defendant queried individuals and addresses to determine whether law enforcement had any open investigations or interest in them. (Id. ¶ 22.)

In sum, in exchange for things of value, among other things, defendant: (1) attempted to obtain or influence the entry into the United States of foreign nationals; (2) omitted enforcing immigration laws consistent with his duties as an HSI agent; (3) conducted law enforcement database inquiries to provide information to E.S. and his associates to help them avoid law enforcement detection and monitoring. (Id.)

Finally, for calendar years 2015 and 2016, defendant failed to report over $93,000 of the income he received as the "check" bribe payments[1]; defendant's under-reporting of income resulted in lowering the taxes reported as due and owing on his Form 1040 individual tax returns. (Id. ¶ 32-34.)

**III. THE PRESENTENCE INVESTIGATION REPORT**

**Group One**: the PSR Grouped the Bribery and Money Laundering Counts together as Group One. (PSR ¶¶ 55-56.) The PSR calculated a base offense level of 14, pursuant to U.S.S.G. § 2C1.1(a)(1) because

---

[1] For purposes of achieving a *very conservative* tax loss calculation, the amount of unreported income does not include the cash bribe payments.

3

defendant was a public official.  (PSR ¶¶ 56 a-b.)  Five separate specific offense characteristics were then added to defendant's base offense level.  First, the PSR calculated a two-level increase, pursuant to U.S.S.G. § 2C1.1(b)(1), because the offense involved more than one bribe.  (Id. ¶ 56 d.) Second, an eight-level increase is applied for the value of the bribe payments over $95,000. (U.S.S.G. § 2C1.1(b)(2), § 2B1(b)(1)(E); PSR ¶ 56 c-f.)  Third, a four-level increase is added because defendant was a public official in a high-level decision-making authority or sensitive position.  (U.S.S.G. § 2C1.1(b)(3); PSR ¶ 56 g-j.)  Fourth, another two-level increase is added because defendant was a public official who facilitated the obtaining of a document, the parole letter for D.K., relating to legal entry into the U.S. (U.S.S.G. § 2C1.1(b)(3); PSR ¶ 56 k-l.) This results in an offense level of 30 under §§ 2S1.1(a)(1) and 2C1.1.  Fifth and final, as a result of defendant's § 1956 money laundering convictions, a two-level increase is applied for a total offense level of 32 for Group One. (U.S.S.G. § 2S1.1(b)(2)(B); PSR ¶ 58.)  The government concurs with the PSR's calculations for Group One.

   **Group Two**:  the government also concurs with the USPPSO that the tax counts (26 U.S.C. § 7201(1)), Group 2, do not increase the total offense level.  (PSR ¶¶ 72-74.)  Group 2 has a total offense level of 16, which is comprised of a base offense level of 12 for a tax loss more than $15,000 but less than $40,000, pursuant to U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(D), and a two-level increase, under § 2T1.1(b)(1), for failure to report over $10,000 in income from criminal activity.  (PSR ¶¶ 65-67, 71.)

4

Despite the fact that Group Two does not increase the offense level, it does provide a basis, however, to justify an upper end sentence as the government recommends here.  This is so because U.S.S.G. § 3D1.4, Application Note 2 states that grouping "could produce adjustments for the additional counts that are inadequate.... [i]f there are several groups and the most serious offense is considerably more serious than all of the others, there will be no increase in the offense level resulting from the additional counts."  That is the case here.  Application Note 2 further elaborates that in these situations, "[o]rdinarily, the court will have latitude to impose added punishment by sentencing toward the upper end of the range authorized for the most serious offense."  Consequently, Application Note 2, provides one of many bases to support the government's higher end sentencing recommendation of 145-months.

With respect to defendant's criminal history, the PSR asserts that defendant's conduct in the instant offense (Group One – Bribery/Money Laundering) is relevant conduct to defendant's conduct in his prior federal case, Cisneros I (CR-17-00229-CAS), because it was part of the same course of conduct or common scheme or plan as the offense of conviction, and the offense of conviction is of a character for which USSG §3D1.2(d) would require grouping or multiple counts. U.S.S.G. §1B1.3(a)(2).   (PSR ¶¶ 50-54.)

The PSR relies upon 1B1.3, Application Note 5 (B)(i) for the proposition that for two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. (Id. ¶ 51.)

The government disagrees with the USPPSO that the present case is substantially connected to the prior case. As this Court found when denying defendant's motion to dismiss for double jeopardy, the conspiracies covered different time periods, the coconspirators are different, the alleged overt acts are distinct, and the object of each conspiracy were different and constituted violations of different statutes. (Dkt. 77 (Order Denying Motion to Dismiss).) The USPPSO noted that if the Court is not persuaded that this prior case is relevant conduct to the instant offense, defendant would receive two criminal history points and be placed in Criminal history category II, which would result in a Guidelines range of 135 to 168 months. (PSR ¶ 85 n 2.)

Nonetheless, the government recognizes that a conservative calculation of defendant's criminal history is prudent. Accordingly, the government reluctantly concurs with the PSR's calculation of defendant's criminal history. Consequently, based upon a Criminal History Category I, and a total offense level of 32, the applicable Guidelines range is 121-151 months' imprisonment.

The USPPSO notes that defendant has sufficient resources, such as extra cars, and recommends that defendant pay a fine of $35,000. (PSR ¶¶ 124-125.) The government concurs in this assessment and recommendation.

**IV. A SENTENCE OF 145 MONTHS AND THREE YEARS OF SUPERVISED RELEASE IS WARRANTED UNDER AN ANALYSIS OF THE 3553(A) FACTORS**

The Section 3553(a) factors further support the government's proposed sentence of 145 months in prison. In determining a sufficient sentence, courts must consider the nature and circumstances of the offense, as well as the history and

6

characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Courts must also consider the need for any sentence imposed to adequately punish, deter, and reflect the seriousness of the offense. 18 U.S.C. § 3553(a)(2). It is paramount that a sentence also protects the public. The government submits that a 145-month sentence is sufficient but not greater than necessary to account for the factors set forth in 18 U.S.C. § 3553(a).

The nature and circumstances of defendant's offenses support a sentence of 145 months' imprisonment. See 18 U.S.C. § 3553(a)(1). There is no question that defendant's crimes were serious, spanned years, and undermined public confidence in government institutions. While working as a trusted federal law enforcement officer with tremendous power, defendant sold his access to confidential law enforcement databases and his ability to influence the entry of foreign nationals into the country.

Defendant's history and characteristics further support the requested sentence. Unlike many of the defendants who appear before this Court, defendant came from a stable, loving supportive two-parent home. (PSR ¶¶ 92, 94-97.) Defendant admits his parents instilled in him a "good work ethic." (Id. ¶ 96.) Rather than build upon this strong family foundation and excellent work ethic, defendant turned to a life of crime in a manner that violates the public trust in law enforcement.

Defendant's crimes were clearly motivated by greed. Defendant lived far beyond his means, as evidenced by the fact that he still has the seven (7) cars he bought before he was arrested in 2017. (PSR ¶ 119.) Defendant initially had a corrupt agreement with Levon

7

Termendzhyan, which was laid bare in his first criminal trial in Cisneros I.

Pushed away and cut-off financially by Termendzhyan, defendant then sought money from E.S. in the fall of 2015 because defendant was living far beyond his means and had thousands of dollars of credit card bills every month.  E.S. richly rewarded defendant with at least $40,000 in cash and over $93,000 in payments directly to credit card companies, mortgage companies, the federal Thrift Savings plan (to re-pay defendant's TSP loan), and to defendant's wife.

While the USSPSO has determined defendant has no criminal history, in reality, defendant's long-term history of engaging in two separate conspiracies, over at least five years, to corruptly enrich himself demonstrates defendant's criminal history is understated, thus warranting a 145-month sentence.

Defendant's long-term association with Levon Termendzhyan and his family further proves that defendant is deserving of an upper-end Guidelines sentence.  Following his release from custody for his prior sentence of one year and one day, defendant continued his long financial association with the family of Levon Termendzhyan, his co-conspirator in Cisneros I.  Indeed, Termdenzhyan's family became defendant's sole source of employment.  By his own admission, defendant was employed by GT Energy Company from his release from custody on Cisneros I to his return to custody at the conclusion of the trial in this case.  (PSR ¶ 115.)  According to California Secretary of State records, GT Energy is a "Petroleum" business owned by Termendzhyan's brother, and operates at the same address in Commerce used by the Termdenzhyans for Noil Energy Group Inc. (Ex. 1

at 1, 4 (GT Energy public records); Ex. 2 at 1, 2 (Noil Energy public records.)

A 145-month Guidelines sentence is sufficient but not greater than necessary to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.

Finally, a sentence at the upper-end of the Guidelines range will also prevent unwarranted sentencing disparities between this defendant and similarly situated defendants. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010), overruled on other grounds by United States v. Miller, 953 F.3d 1095 (9th Cir. 2020) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity[.]'"); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."). Accordingly, the government submits that, on balance, these factors weigh in favor of a sentence at the upper-end of the Guidelines range.

## V.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to 145 months in prison, followed by 3 years of supervised release, and order that he pay a $3,000 special assessment, and a $35,000 fine.