E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorney
Public Corruption and Civil Rights Section
MICHAEL J. MORSE (Cal. Bar No. 291763)
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorneys
General Crimes Section
     1500/1100/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-6077/7367/0304
     Facsimile:  (213) 894-7631
     E-mail:    ruth.pinkel@usdoj.gov
                michael.morse@usdoj.gov
                juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-51(A)-RGK |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE JUDGMENT AND ORDER NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE (DKT. 124) |
| v. | |
| FELIX CISNEROS, JR., | |
| Defendant. | Hearing Date: October 11, 2022<br>Hearing Time: 1:30<br>Location:    Courtroom of the<br>             Honorable R. Gary<br>             Klausner |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ruth C. Pinkel, Michael J. Morse, and Juan M. Rodriguez, hereby files its opposition to defendant's motion for to vacate judgment and order new trial based upon newly discovered evidence. (Dkt. 124).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 5, 2022

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
RUTH C. PINKEL
MICHAEL J. MORSE
JUAN M. RODRIGUEZ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3
After a five-day trial, a federal jury found Defendant FELIX

4
CISNEROS, JR. ("defendant") guilty of Conspiracy to Commit Bribery of

5
a Public Official, in violation of 18 U.S.C. § 371; Bribery of a

6
Public Official, in violation of 18 U.S.C. § 201(b)(2)(A) and (C);

7
twenty-six counts of Money Laundering, in violation of 18 U.S.C. §

8
1956(a)(1)(B)(i); and two counts of Subscribing to a False Tax

9
Return, in violation of in violation of 26 U.S.C. § 7206(1).  As

10
proven at trial, defendant conspired with others to bribe a public

11
official, himself, and instructed a coconspirator, E.S., to funnel

12
bribe checks payable directly to the third-party financial

13
institutions holding defendant's credit card and loan debts, and to

14
defendant's wife, in order to conceal the proceeds.  He then

15
intentionally omitted income from the bribe proceeds from his 2015

16
and 2016 tax returns.

17
On September 12, 2022, government witness E.S. disclosed that in

18
February 2015, E.S.'s then business partner at Pillar Law Group

19
("PLG"), H.M., fraudulently assumed E.S.'s identity, at the direction

20
of and in exchange for payment from E.S., and took and passed the

21
California State Bar Exam posing as E.S.  Further, E.S. disclosed

22
that H.M., as well as E.S.'s other business partner at PLG, A.K.,

23
were aware that E.S. used the PLG client trust accounts in

24
furtherance of a credit card fraud scheme.  Additionally, E.S.

25
disclosed that A.K. and H.M. engaged in credit card fraud with E.S.,

26
although he had previously said A.K. and H.M. had no knowledge of any

27
credit card fraud at PLG.

28

1    On September 23, 2022, the defendant filed "Motion to Vacate
2    Judgement and Order New [Trial] Based Upon Newly Discovered
3    Evidence."  (Dkt. 124 ("Mot.").)  In it, defendant argues that
4    "[E.S.'s] false portrayal of being a licensed attorney—and thus an
5    Officer of the Court—gave him a certain degree of credibility in the
6    eyes of the jury."  (Mot. at 1.)  But at trial, E.S. did not portray
7    himself as being a <u>currently</u> licensed attorney.  To the contrary,
8    defense counsel admitted at trial "Defense Exhibit A," E.S.'s April
9    2020 plea agreement filed before this Court, wherein E.S. agrees to
10   "[s]elf-report to the State Bar of California...within one week of
11   his guilty plea" the fact of E.S.'s plea agreement and guilty plea.
12   (<u>See</u> government's Exhibit 1 at 2.)  E.S.'s plea agreement explicitly
13   stated that the conduct outlined therein was "a basis for [E.S.'s]
14   disbarment from any bar association, including California."[1]  (<u>Id.</u>)

15       Moreover, because E.S. testified to his extensive criminal
16   conduct, including at least a decade's long involvement with
17   organized identity theft and credit card fraud, bribery of multiple
18   federal agents and engaging in criminal conduct with other law
19   enforcement, lying to the FBI and other government law enforcement
20   agencies, as well as his subsequent guilty pleas for the same, E.S.'s
21   September 2022 disclosures are purely impeachment and cumulative.

22       Finally, despite the defendant's argument that E.S.'s testimony
23   was "the only evidence presented to establish at least one element"
24   of the crimes charged against defendant (Mot. at 2), at trial the

---

[1] By the time of his trial testimony, ES had been ineligible to practice law in California for almost two years.  <u>See</u> Ex. 4 (ES CA Sate Bar Information.)

1  government presented ample corroborating evidence that established
2  several overt acts and each element of the crimes charged.
3  Defendant's motion is without merit.  It should be denied.

4  **II.   RELEVANT FACTUAL BACKGROUND**

5      At trial, E.S. testified about the corrupt nature of his
6  relationship with defendant, including that he paid defendant in
7  exchange for protection.  E.S. testified that defendant provided
8  protection to E.S. by, *inter alia*, accessing sensitive law
9  enforcement databases at E.S.'s request, and relaying confidential
10 information related to at least one ongoing criminal investigation,
11 and the immigration and/or visa status of individuals about whom E.S.
12 wanted information.  E.S. testified that he gave the defendant, *inter*
13 *alia*, cash, checks, and other things of value in exchange for
14 defendant's protection.  During E.S. testimony, numerous bank records
15 showing charges E.S. incurred for the defendant's benefit, checks
16 written to the defendant and his wife, as well as photographs, text
17 message communications and other evidence corroborating E.S.
18 testimony were received into evidence.

19     E.S. also testified that defendant attempted to assist E.S.'s
20 brother-in-law, D.K., a then inadmissible foreign national, in
21 gaining entry into the United States by falsifying Department of
22 Homeland Security ("DHS") documents that purported to show D.K. was
23 an individual with information pertinent to an ongoing narcotics
24 investigation.[2]  (Trial Ex. 159 (Parole Letter).)

25 

26     [2] Contrary to defendant's arguments, the government's second
   prosecution of defendant was supported by much evidence independent
27 of E.S.  (Mot. at n 2.)  Once it learned  of E.S.'s connection to the
   D.K. Parole Letter, the government corroborated E.S. by, among other
28 things, interviewing D.K., and defendant's supervisor, and reviewing
                          *(footnote cont'd on next page)*

3

1    E.S. also testified to his long-time involvement in organized

2    identity theft and credit card fraud, as well as criminal acts he

3    engaged in with then Glendale Police Department Detective John

4    Balian.  E.S. also testified that he bribed then FBI Special Agent

5    Babak Broumand in exchange for "protection," mostly in the form of

6    running names in confidential law enforcement databases in exchange

7    for money.  Additionally, E.S. admitted to lying to local and federal

8    law enforcement agencies on several occasions on a myriad of topics

9    including his criminal involvement with Babak Broumand, John Balian,

10   and the defendant.

11       Moreover, the government introduced photographic evidence

12   showing defendant flying on E.S.'s private jet, and enjoying meals

13   paid for by E.S.  Some of those photographs showed the defendant,

14   along with other corrupt law enforcement officers E.S. was engaged in

15   criminal activity with at the time, spending time together enjoying

16   meals and other things of value provided by E.S.

17       E.S. also testified that before coming to America in 2004, E.S.

18   was an attorney in Armenia.  (R.T. April 26, 2022, at 203.)  E.S.

19   further testified that although he did not have a law license when he

20   initially came to America, he did eventually pass the California Bar

21   Exam.  (See R.T. April 27, 2022 at 58.)

22       During cross examination of E.S., defense counsel introduced

23   E.S.'s signed and filed April 2020 plea agreement.  (See Ex. 1.)  In

24   it, E.S. agreed to plead guilty to Bank Fraud, False Statements to

25   the FBI (about his bribery of Babak Broumand), and bribery of both

26

27   defendant's communications about D.K.  The government also confirmed
     there was no HSI source file for D.K., thus further indicating he was
28   never an HSI source, contrary to defendant's false assertions to his
     supervisor.

4

Babak Broumand and the defendant.  (Id. at 2.)  E.S. also agreed to self-report the fact of his plea agreement, as well as his guilty plea to the California State Bar.  (Id.)  The plea agreement also made clear that E.S.'s criminal conduct was grounds for disbarment, and that E.S. would not challenge any such disbarment proceedings. (Id.)

Through government witness FBI Special Agent Michael Torbic, the government also presented the jury with extensive timeline evidence detailing defendant and his co-conspirators' communications, defendant's many corrupt acts, and the payments clearly made in exchange for those acts.  Special Agent Torbic's testimony and timeline evidence showed the defendant had queried individuals and addresses associated with E.S. on multiple occasions.  Special Agent Torbic's timelines also showed text message communications between the defendant and E.S.  In one such text message the defendant wrote to E.S. "God is looking over you and so are the Feds...Happy Sunday my brother."  (See government's trial exhibit 222, attached hereto as government's exhibit 2.)  Additionally, Special Agent Torbic's timeline introduced several other direct communications between the defendant and E.S.  In one text message exchange, E.S. sent the defendant the personally identifying information of an individual, P.T.  (See government's trial exhibit 217, attached hereto as government's exhibit 3.)  Special Agent Torbic's testimony revealed that, after receiving this text, the defendant soon thereafter queried P.T. in a confidential law enforcement database.  The reasonable inference to be drawn from these direct communications between the defendant and E.S., where the defendant appears to be assuring E.S. that "the feds" were "looking over" E.S., and the

defendant's subsequent confidential law enforcement database queries of individuals associated with E.S. is that defendant was utilizing confidential law enforcement databases to provide information and protection to E.S. in exchange for cash, checks, and other things of value.

## III. ARGUMENT

Rule 33(a) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  "A motion for a new trial is directed to the discretion of the district judge."  United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981).  In exercising its discretion, a court is entitled to weigh the evidence and evaluate the credibility of witnesses. United States v. Lanoy Alston, D.M.D., P.C., 974 F.2d 1206, 1211 9th Cir. 1992).  In general, a court should grant a new trial under Rule 33 "only in exceptional cases in which the evidence preponderates heavily against the verdict."  Pimentel, 654 F.2d at 545.  A court may grant a new trial on the basis of, among other things, newly discovered evidence.

To qualify for a new trial on the ground of newly discovered evidence, a defendant must show: "(1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial." United States v. Hinkson, 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc); United States v. Harrington, 410 F.3d 598, 601 (9th Cir.

2005).  The requirement that the newly discovered evidence be likely to produce an acquittal is "a stringent one."  United States v. Steel, 759 F.2d 706, 713 (9th Cir. 1985).[3]

"[E]vidence that would merely impeach a witness cannot support a motion for a new trial."  United States v. Kulczyk, 931 F.2d 542, 549 (9th Cir. 1991); United States v. Alexander, 695 F.2d 398, 402 (9th Cir.1982) (holding that "[e]vidence which is merely impeaching is not sufficient to support a motion for new trial" and that "[e]vidence which is cumulative is insufficient to warrant a new trial").  In Hinkson, the defendant argued that "Swisher was a critical witness for the government's case, so any impeachment of his credibility would have undermined the government's entire case."  585 F.3d 1247, 1266.  The Ninth Circuit held that because the "evidence served no purpose other than to impeach" a witness, this "doomed" defendant's new trial motion.  Id.

The Ninth Circuit has held that a government witness's subsequent conviction for false statements in a different trial was insufficient to warrant a new trial because the evidence was "merely impeaching."  United States v. Berry, 624 F.3d 1031, 1043 (9th Cir. 2010); see also Turner v. United States, 137 S. Ct. 1885, 1894 (2017) (finding no materiality where "undisclosed impeachment evidence . . . was largely cumulative of impeachment evidence petitioners already had and used at trial.").

---

[3] Defendant claims the new information is Brady material. (Mot. at 1, n. 1).  It is not.  The government did not possess or know about this information until September 12, 2022.  United States v. Agurs, 427 U.S. 97, 111 (1976); see also Martinez v. Ryan, 2019 WL 2509245, at *9 (9th Cir. June 18, 2019) (Brady involves disclosure of information to defendant after trial which had been known to the government but not the defendant.)

7

1    In some situations, "newly-discovered impeachment evidence may
2    be so powerful that, if it were to be believed by the trier of fact,
3    it could render the witness' testimony totally incredible.  In such a
4    case, if the witness' testimony were uncorroborated and provided the
5    only evidence of an essential element of the government's case, the
6    impeachment evidence would be 'material.'" United States v. Davis,
7    960 F.2d 820, 825 (9th Cir. 1992); United States v. Taglia, 922 F.2d
8    413, 415 (7th Cir. 1991) ("If the government's case rested entirely
9    on the uncorroborated testimony of a single witness who was
10   discovered after trial to be utterly unworthy of being believed
11   because he had lied consistently in a string of previous cases, the
12   district judge would have the power to grant a new trial in order to
13   prevent an innocent person from being convicted.").  The Ninth
14   Circuit has held that even a witness's "false statement, limited to
15   one date at one trial, is a far cry from this high standard." Berry,
16   624 F.3d 1031, 1043.

17   Simply put, "even if the impeachment evidence completely
18   destroyed [E.S.]'s testimony, there remains sufficient evidence to
19   support all of the [defendant]'s convictions." Davis, 960 F.2d 820,
20   827; United States v. Halali, 2017 WL 3232566, at *7 (N.D. Cal. July
21   28, 2017) (denying a motion for a new trial based on newly discovered
22   evidence where such evidence was merely impeaching, did not render
23   the witness's testimony "totally incredible," and the testimony was
24   corroborated by numerous witnesses and documentary evidence; thus,
25   the testimony did not provide the only evidence of an essential
26   element of the government's case.)

27   *First*, E.S. testimony at trial was corroborated by, *inter alia*,
28   bank records, which included records of charges incurred by E.S. for

8

the benefit of the defendant, and checks written directly to defendant's wife or directly to banks or the Federal Thrift Savings Program (government 401k-type plan) to pay defendant's debts.  <u>See also</u>, Ex. 6 (Trial Ex. 275-Check Summary Chart, which lists financial institutions to which checks made payable except for "VC" which means checks written to defendant's wife, Veronica.)  Moreover, the government introduced photographic evidence showing defendant flying on E.S.'s private jet, and enjoying meals paid for by E.S.  Some of those photographs showed the defendant, along with other corrupt law enforcement officers E.S. was engaged in criminal activity with at the time, spending time together enjoying meals and other things of value provided by E.S.

*Second*, the government presented evidence of direct text message communications between the defendant and E.S. where the defendant stated that "God" was "looking over" E.S., as well as "the feds," thus corroborating E.S. testimony that the defendant, then a federal agent, was providing protection to E.S.  Additionally, the government introduced evidence showing defendant queried individuals and addresses associated with E.S. in confidential law enforcement databases after E.S. communicated, sometimes directly via text message, with the defendant requesting he do precisely that.[4]  Thus, contrary to defendant's bare assertion that E.S.'s testimony was "the only evidence presented to establish at least one element" of the crimes charged against defendant (Mot. at 2), evidence received at trial more than corroborated E.S.'s testimony.

---

[4] <u>See also</u> Exhibit 5 (Trial Exhibit 128 at p. 4) U.S. State Department records showing connection between foreign national W.R. and E.S., which corroborates E.S. testimony.

*Third*, that E.S. lied and committed frauds in the past is no revelation.  Indeed, he admitted to such, and more, at trial, cataloguing in detail his long history of credit card fraud and identity theft, including through the use of Pillar Law Firm, lying to the FBI and other law enforcement agencies about his criminal conduct and criminal coconspirators, and subsequently pleading guilty to the same.  Therefore, evidence of E.S.'s other frauds are both cumulative of trial testimony and evidence already received, as well as "merely impeaching."  Hinkson, 585 F.3d at 1264.  Accordingly, defendant cannot possibly show that "newly-discovered impeachment evidence will probably produce an acquittal." Id.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion.